Filed 2/29/16  Carter v. Cetner CA2/8

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION EIGHT

| | |
|---|---|
| GEORGE A. CARTER et al., | B264994 |
| Plaintiffs and Respondents, | (Los Angeles County Super. Ct. No. BC474200) |
| v. | |
| SYDNEY CETNER, | |
| Defendant and Appellant. | |

APPEAL from the judgment of the Superior Court of Los Angeles County. John L. Segal, Judge.  Affirmed.

Rogers & Harris and Michael Harris for Defendant and Appellant.

Wolf, Rifkin, Shapiro, Schulman & Rabkin, Marc E. Rohatiner and Eric Levinrad for Plaintiffs and Respondents.

\* \* \* \* \* \* \* \* \* \*

This appeal arises from the trial court's order of June 16, 2015, granting a motion to enforce a written settlement agreement pursuant to Code of Civil Procedure section 664.6 (hereafter section 664.6). Plaintiffs and respondents George A. Carter and Songgin P. Carter, as trustees of the Carter Family Trust, brought the motion to enforce. Defendant and appellant Sydney Cetner, as trustee for the Cetner Family Trust, opposed the motion and contends on appeal the trial court erred in granting the motion by deviating from the terms of the parties' settlement and in failing to hold an evidentiary hearing.

We affirm.

## FACTUAL AND PROCEDURAL BACKGROUND

Plaintiffs and defendant are the current co-owners of a 47-unit apartment building in the city of Los Angeles (hereafter "the property"). Plaintiffs and defendant, as trustees, hold title to the property as tenants in common, each with a 50 percent interest. Their relationship as co-owners of the property is governed by a written partnership agreement executed in 1995 (hereafter "the Partnership Agreement"). The Partnership Agreement was signed by plaintiffs and by Nathan and Etta Cetner, defendant's parents and predecessors in interest, and identifies the property as the partnership asset. An attachment to the agreement identifies the partners as Nathan Cetner and plaintiff George Carter.

Defendant became the successor trustee of the Cetner Family Trust after her parents passed away. Paragraph 15 of the Partnership Agreement is titled "Continuation or Termination" and provides various procedures for dissolving or continuing the partnership in the event of a change in status of one partner, such as death.

Paragraph 15.1 provides: "Election by Partner. On the dissolution of the partnership by reason of the death, withdrawal, or other act of any partner before the expiration of the term herein specified, the remaining partner may, if he so desires, continue the business. In the event the remaining partner so elects to continue the business, he shall have the right to purchase the interest of the other partner in the business assets and the interest of the other partner in the business assets [*sic*] and good

2

will by paying to such partner or legal representatives of such partner the value of such interest, in the manner set forth below:

"15.1.1  Appointment of Appraisers.  The partner desiring to continue the business shall appoint one individual as an appraiser and the withdrawing partner or legal representative of a deceased or incapacitate [*sic*] partner shall appoint one individual as an appraiser.  The appraisers so appointed shall determine the value of the assets of the partnership, and the partner desiring to continue the business shall pay to the withdrawing partner or [*sic*] the legal representative shall execute such documents as may be necessary to convey such partner's interest in the partnership to the other partners.

"15.1.2  Additional Appraiser in Event of Disagreement.  In the event the appraisers are unable to agree on the value of the assets of the partnership within 30 days after their appointment, they shall select and designate one additional appraiser for this purpose whose appraisement shall be binding on all parties.  It is further agreed that in the event any appraiser should become unable or unwilling for any reason to serve, a substitute shall be appointed by the person originally selecting him.  In the event that the two appraisers first appointed shall be unable to agree on a third appraiser, such appraiser shall be appointed by the presiding judge of the Superior Court of the LA County.

"15.2  Rights and Obligations of Continuing Partners.  The partner continuing the business shall assume all of the existing obligations of the partnership and shall indemnify the withdrawing partner on [*sic*] the legal representative of a partner against all liability thereon.  The partner continuing the business may continue to use the partnership name."

After the death of defendant's parents, plaintiffs sought to initiate the appraisal process in accordance with paragraph 15 of the Partnership Agreement so that they could purchase defendant's interest in the property.  Defendant apparently preferred to attempt to sell the property to a third party or otherwise objected to plaintiffs asserting their buyout rights set forth in paragraph 15.  Plaintiffs therefore filed this action for partition.

In July 2012, plaintiffs and defendant executed a written settlement agreement (hereafter "the Settlement Agreement").  The Settlement Agreement recites that the parties intended to pursue the "buy-out rights" provided for in the Partnership Agreement

3

and to dismiss the partition action. Specifically, paragraph 2 of the Settlement Agreement titled "Agreements and Undertakings" provides:

"A. [Plaintiffs] will dismiss the Action without prejudice, however, the Court will be requested to retain jurisdiction pursuant to C.C.P. § 664.6. The stipulation to dismiss with retention of jurisdiction pursuant to C.C.P. § 664.6 will be in accordance with the attached Exhibit A.

"B. The Parties will forthwith undertake to effectuate the provisions of Paragraph 15 of the Partnership Agreement and to perform all other obligations deemed mutually appropriate under the Partnership Agreement."

The Settlement Agreement also contains the following provision: "On demand, the Parties shall promptly execute and deliver such additional instruments and extend such additional cooperation as may be reasonably necessary to effectuate the purposes of this Agreement."

On August 7, 2012, the stipulation to dismiss plaintiffs' partition action, signed by all parties, was filed. The stipulation expressly provided that the action was to be dismissed without prejudice with the court retaining jurisdiction under section 664.6. Pursuant to the parties' stipulation, the trial court issued its order dismissing the case without prejudice and retaining jurisdiction "to enforce the Settlement Agreement."

Thereafter, the parties were unable to complete the appraisal process in accordance with the terms set forth in Paragraph 15. In January 2014, plaintiffs filed their first motion to enforce the Settlement Agreement, asking the court to order defendant to comply with the appraisal process. That motion was granted. As relevant here, the court's order of April 25, 2014, following the language of the Settlement Agreement, provided that if the parties' respective appraisers agreed on the value of the property, then "Defendant shall sell her interest in the Property to Plaintiff [*sic*] for the value of Defendant's interest." In the event the appraisers did not agree, the order provided that the appraisers were to "jointly select an additional appraiser within forty-five days of the entry of this order." If the parties' appraisers were unable to jointly agree on a third appraiser, the court ordered that it would select an "independent appraiser" and defendant "shall sell her interest in the Property to Plaintiffs for the value of Defendant's interest in

4

the Property as determined by the Independent Appraiser." The order also included the following language: "Any sale shall be governed by a written purchase and sale agreement containing the standard provisions for the purchase and sale of an apartment building." The court did not enter a judgment, but retained jurisdiction "to further enforce the terms of the Settlement Agreement or this order."

The parties retained their respective appraisers who were unable to agree on a value for the property or a third appraiser. The parties requested the court to appoint the third appraiser. On June 27, 2014, the court issued an order identifying three appraisers that it had selected at random from a list of appraisers maintained by the Los Angeles Superior Court. The court advised that each party could "strike" one of the proposed appraisers, notify the court of same, and the court would then make its selection from the remaining name or names.

Defendant objected to all three of the court's proposed appraisers, stating that each had been contacted, each was a residential appraiser but not qualified to appraise a 47-unit apartment building, at least one had declined to be retained, and one was deceased.

A further hearing was held July 16, 2014 at which the court, after discussion with the parties, ordered that each party was to propose the name of a qualified third appraiser, the court would thereafter select one of the two, and the parties would be bound to that appraiser's valuation. In compliance with the court's order, the parties submitted the names of their respective candidates; defendant proposed John Olivas, and plaintiffs proposed J. Richard Donahue.

On July 29, 2014, the court issued an order appointing J. Richard Donahue to act as the third appraiser.

On March 11, 2015, Mr. Donahue issued his appraisal report setting a value on the property as of March 6, 2015 at $9,850,000.

Plaintiffs agreed to proceed with the purchase of defendant's interest for $4,925,000. Plaintiffs forwarded a proposed purchase and sale agreement to defendant using an AIR Commercial Real Estate Association form agreement for the purchase of residential income properties.

5

Defendant did not respond to plaintiffs' request to proceed with the sale and plaintiffs therefore filed their second motion to enforce the settlement agreement pursuant to section 664.6.

Defendant opposed the motion and also filed her own separate motion seeking an order setting aside Mr. Donahue's appraisal. In addition to raising the contention that Mr. Donahue's valuation was at least $1 million too low, defendant argued the valuation process was flawed because the court appointed Mr. Donahue who was tainted because he had been proposed by plaintiffs. Defendant's motion and her opposition to plaintiffs' motion were focused primarily on expressing disagreement with Mr. Donahue's appraisal. Defendant's papers do not include any argument that the proposed purchase and sale agreement was not contemplated by the Settlement Agreement or had otherwise not been agreed to by the parties. The agreement is mentioned only in one sentence at the end of defendant's opposition: "Furthermore, the prepared AIR form Purchase and Sale Agreement submitted by [plaintiffs' counsel] includes terms which should not be acceptable including paragraphs 8.5, 12, and others which are not appropriate to the transaction contemplated."

After hearing argument on both motions, the court denied defendant's motion to set aside the appraisal and granted plaintiffs' motion to enforce the settlement. The court ordered defendant to sign the purchase and sale agreement proposed by plaintiffs. The court did not enter its order as a judgment. Defendant filed objections to the court's order, contending that provisions in the purchase and sale agreement were improper (again without any explication as to why), and that the order itself was improper as section 664.6 required entry of a judgment.

Plaintiffs served notice of entry of the court's order on June 19, 2015. This appeal followed.

## DISCUSSION

### 1.    Appealability

Defendant contends the order on the second motion from which she appeals is an appealable order despite the fact the trial court did not enter a final judgment. We agree.

6

In granting plaintiffs' motion to enforce under section 664.6, the court resolved all remaining issues between the parties. "When, as here, a trial court's order from which an appeal has been taken disposes of the entire action, the order 'may be amended so as to convert it into a judgment encompassing actual determinations of all remaining issues by the trial court or, if determinable as a matter of law, by the appellate court, and the notice of appeal may then be treated as a premature but valid appeal from the judgment.' [Citation.]" (*Griset v. Fair Political Practices Committee* (2001) 25 Cal.4th 688, 700.) "Absent a formal entry of judgment, an appellate court may amend an order to include a judgment *if the effect of the order is to finally determine the rights of the parties in the action.*" (*Hines v. Lukes* (2008) 167 Cal.App.4th 1174, 1183, italics added [concluding trial court order enforcing settlement was a final determination of the rights of the parties warranting amendment of the order to include an appealable judgment "so as to expedite appellate review"] (*Hines*); accord, *Critzer v. Enos* (2010) 187 Cal.App.4th 1242, 1251-1252 (*Critzer*).)

## 2. Standard of Review

A motion to enforce a settlement agreement under section 664.6 provides a summary procedure "for specifically enforcing a settlement contract without the need for a new lawsuit." (*Weddington Productions, Inc. v. Flick* (1998) 60 Cal.App.4th 793, 809 (*Weddington Productions*).) In ruling on a motion to enforce, the trial court "may receive evidence, determine disputed facts, and enter the terms of a settlement agreement as a judgment." (*Id*. at p. 810.) "The trial court's factual findings on a motion to enforce a settlement under section 664.6 'are subject to limited appellate review and will not be disturbed if supported by substantial evidence.' [Citation.] In instances involving questions of law, including the construction and application of the statute, the trial court's decision is not entitled to deference and will be subject to independent review." (*Critzer*, *supra*, 187 Cal.App.4th at p. 1253; accord, *In re Marriage of Assemi* (1994) 7 Cal.4th 896, 911.)

## 3. Plaintiffs' Second Motion to Enforce Settlement Pursuant to Section 664.6

"A court ruling on a motion under . . . section 664.6 must determine whether the parties entered into a valid and binding settlement. [Citations.] A settlement is

7

enforceable under section 664.6 only if the parties agreed to all material settlement terms." (*Hines*, *supra*, 167 Cal.App.4th at p. 1182.) In making this determination, the statute authorizes the trial court to resolve disputed facts, but it may not "*create* the material terms of a settlement, as opposed to deciding what terms *the parties themselves* have previously agreed upon." (*Weddington Productions*, *supra*, 60 Cal.App.4th at p. 810; accord, *Critzer*, *supra*, 187 Cal.App.4th at pp. 1252-1253.)

There is no dispute here that the parties entered into a valid written settlement agreement that was signed by all the parties, and capable of enforcement under section 664.6. Rather, defendant contends the trial court, in granting plaintiffs' motion, erred by imposing terms and obligations that were not agreed-upon settlement terms, and by failing to hold an evidentiary hearing before ruling on the motion.

Defendant first contends the court failed to adhere to the process for the appointment of a third appraiser as set forth in paragraph 15 of the Partnership Agreement, and instead created its own procedure. The record belies defendant's contention. Paragraph 15 did not specify *any* procedure for the court to follow in the event it was called upon to appoint the third appraiser. Paragraph 15.1.2 provides only that if the parties' appraisers cannot agree on a third appraiser, then the court "shall" appoint the third appraiser, and that the valuation by any third appraiser "shall be binding on all parties." Therefore, the court could follow any reasonable procedure for selecting a third appraiser.

When the trial court here was called upon to appoint the third appraiser, the initial three individuals the court proposed were either objected to by the parties or unable to serve. The court then held a hearing and worked out a procedure with the parties about how to proceed. The court's order of July 29, 2014 recites that the parties "agreed that each party would submit the name of an appraiser and the court would select one of the two appraisers to appraise the property, and this appraisal would be binding on the parties." Defendant complied with that agreed-upon process and proposed the name of a qualified appraiser, as did plaintiffs. Nothing in the record indicates defendant raised any objection to the court proceeding in this manner. Defendant has not shown there was

anything unreasonable or improper about the method used by the court in appointing a third appraiser.

As for defendant's contention that the purchase and sale agreement contained terms outside the scope of the parties' settlement, we agree with plaintiffs that the issue was forfeited by defendant's failure to raise it below. "It is a fundamental proposition that ' "[a]n appellate court will ordinarily not consider procedural defects or erroneous rulings, in connection with relief sought or defenses asserted, where an objection could have been but was not presented to the lower court by some appropriate method . . . ." [Citation.]' " (*Critzer*, *supra*, 187 Cal.App.4th at p. 1261, citing *Doers v. Golden Gate Bridge etc. Dist.* (1979) 23 Cal.3d 180, 184-185, fn. 1; see also 9 Witkin, Cal. Procedure (5th ed. 2010) Appeal, § 400, pp. 458-459.)

Defendant never objected below to the use of a standard AIR purchase and sale agreement. Defendant never asked the trial court to find the AIR form was not an additional document and instrument "reasonably necessary to effectuate the purposes of this Agreement" as contemplated in the Settlement Agreement. Defendant never argued that any specific term included in the AIR form proposed by plaintiffs was not within the scope of the parties' settlement. There is one sentence, buried at the end of defendant's opposition to plaintiffs' second motion to enforce the settlement, asserting, without any explication, that some terms in the purchase and sale agreement were "not appropriate." Defendant never argued that if the court granted the second motion to enforce the Settlement Agreement, the court would be creating a material term to which the parties had not agreed. Defendant never asked the court to rule on any objection to the AIR form or any provision in it. The one sentence buried at the end of her brief was insufficient to preserve the argument for appeal.

Defendant's postruling objections to the form of the court's order which reiterated defendant's conclusory assertion that certain provisions were improper also did not preserve the issue for appeal. At oral argument, counsel for defendant, citing to specific pages in the clerk's transcript, asserted that the issue was presented to the court for consideration. Counsel identified two separate objections filed after the court's ruling on the *first* motion to enforce. However, a review of the record demonstrates that neither of

9

those documents contain any objection that the execution of a standard purchase and sale agreement was not contemplated by the parties' agreement. The only objections stated in those documents were that the scope of the appraisal should include not only the value of the property but the "good will" of the business, and that the court's order should specify a time frame within which plaintiffs must complete the purchase. The other citation noted by counsel was the opposition filed in response to the second motion to enforce containing the one sentence we discussed, and found deficient, above.

Finally, defendant contends the court erred by failing to hold an evidentiary hearing before ruling on plaintiffs' motion. A trial court asked to resolve a motion brought pursuant to section 664.6 has discretion to hold an evidentiary hearing or resolve the disputed facts on the declarations and evidence submitted by the parties. (See, e.g., *Weddington Productions*, *supra*, 60 Cal.App.4th at p. 810; accord, *Osumi v. Sutton* (2007) 151 Cal.App.4th 1355, 1360 [court ruling on a section 664.6 motion " 'may consider oral testimony or may determine the motion upon declarations alone' "].) Defendant's argument that the court abused its discretion by not holding a hearing because the material presented was "voluminous" is without merit. The court acted entirely within its discretion by reviewing the parties' papers, listening to oral argument and resolving the motion without an evidentiary hearing.

## DISPOSITION

The court's order of June 16, 2015 is affirmed. Plaintiffs and respondents shall recover costs on appeal.

GRIMES, J.

WE CONCUR:

BIGELOW, P. J.

RUBIN, J.

10